UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 7:15-cv-97-ART-EBA

ROBYN BENTLEY,                                                         PLAINTIFF,

v.                                            **ORDER**

HIGHLANDS HOSPITAL CORPORATION, et al,                      DEFENDANTS.

* * * * * * * * * *

  This matter is before the Court on Plaintiff's Motion to Compel Discovery Responses, [R. 82], requesting that Defendant Highlands Regional Medical Center ("HRMC") be compelled to produce responses to Plaintiff's interrogatories and requests for production of documents.  For the reasons set forth below, Plaintiff's Motion to Compel shall be granted in part, and denied in part.

STANDARD

  The Federal Rules of Civil Procedure permit discovery of any non-privileged matter, if the matter is proportional to the needs of the case and relevant to the parties' claims or defenses. Fed. R. Civ. P. 26.  While relevance is essential, a number of additional factors must also be considered, such as the importance of the issues at stake, the amount in controversy, the parties' relative access to information and resources, the beneficial role discovery could play in resolving the issues, and whether the proposed discovery's burdens or expense outweighs its benefits.  Fed. R. Civ. P. 26(b)(1) (amended December 1, 2015).  Thus, the scope of discovery is within the broad discretion of the courts, Lewis v. ACB Bus. Services, Inc., 135 F.3d 389, 402 (6th Cir. 1998), and accordingly, courts must limit and define the boundaries of discovery where needed.

1

Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978).

The 2015 amendments to Rule 26's Advisory Committee Notes, "intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse," establish that the party seeking to compel discovery must show how the underlying discovery information bears on the issues, while the party opposing discovery must show that the material sought either falls beyond the scope of relevance, or is so marginally relevant that the potential harms of production outweigh the presumption in favor of broad disclosure.  Invesco Institutional (N.A.), Inc. v. Paas, 244 F.R.D. 374, 380 (W.D. Ky. 2007); Horizon Holdings, LLC v. Genmar Holdings, Inc., 209 F.R.D. 208, 211–12 (D. Kan. 2002).  Discovery requests are not limitless, and while plaintiffs should have sufficient access to the information necessary to investigate their claims, they must be prohibited from taking "fishing expeditions" in hopes of developing meritorious claims along the way.  The court retains final discretion to determine whether a plaintiff's discovery request is too broad or oppressive.  Surles v. Greyhound Lines, Inc., 474 F.3d 288, 305 (6th Cir. 2007).

## ANALYSIS

Plaintiff's first amended complaint [R. 110] alleges medical negligence against Dr. Terry D. Hall, D.O. ("Dr. Hall"), and alleges vicarious liability against Dr. Hall's employer HRMC, on grounds that Dr. Hall misinterpreted Plaintiff's MRI, and that Dr. Hall and Plaintiff's treating nurses caused delayed treatment which allowed her medical condition to severely worsen. Plaintiff additionally asserts causes of actions against HRMC for negligent hiring and supervision, negligent infliction of emotional distress, and violations of the Kentucky Consumer Protection Act ("KCPA"), K.R.S. § 367.170, and the Emergency Treatment and Labor Act

("EMTALA"), 42 U.S.C § 1395dd, on grounds that HRMC falsely advertised that they provide competent emergency care.  [Id.].  In turn, Defendants have asserted defenses of accord and satisfaction, estoppel, release, and waiver.  [R. 69].

In response to Plaintiff's motion to compel, Defendants argue that Plaintiff's interrogatories and requests for production are either broad, overly vague, ambiguous, oppressive, or unduly burdensome, adding that they improperly seek confidential and proprietary documents and information lacking any possible relevance to the negligence-based claims and defenses.  [R. 99].  Defendant explains that the claims asserted against HRMC and defenses raised by HRMC are all exclusively based upon Dr. Hall's alleged misinterpretation of Plaintiff's lumbar MRI taken on July 29, 2013.  Accordingly, Defendant asserts that Plaintiff's requests for information regarding former complaints against Dr. Hall, HRMC's relationship with Dr. Hall, the hospital's corporate structure, procedures and by-laws, and other tangential matters are irrelevant to the negligence claim.  Plaintiff's reply clarifies that she has not only alleged HRMC is liable for Dr. Hall's action but has also alleged negligence on the part of HRMC's nurses and staff members involved in Plaintiff's treatment.  [R. 105 at 1–3].  For the reasons set forth below, Plaintiff's Motion to Compel [R. 82] will be granted in part, and denied in part.

**(1)** **Interrogatory No. 14:** Please state whether verbal and/or written complaints concerning the services performed by Dr. Hall have ever been made either verbally or in writing to HRMC. If so, please identify to whom said complaints were reported, the person or persons making the complaint(s), the nature of the complaint(s), and the resolution of each and every complaint.

Regarding Interrogatory No. 14, Plaintiff argues that because any prior complaint HRMC has on file would be "directly indicative of any quality issues with Dr. Hall's performance of his

3

job duties (and HRMC's knowledge of those issues)," such information "has great probative value regarding the Plaintiff's allegations." [R. 82 at 4]. Plaintiff further argues HRMC failed to provide responsive information because they "[did] not want to disclose it." [Id.]. Defendant objects on grounds the request is "vague, ambiguous, overly broad, and unduly burdensome, seeks information irrelevant to Plaintiff's claims, and is not proportional to the needs of the case." [R. 99 at 8].

From what the Court can tell, HRMC has provided an answer to Interrogatory No. 14 to the best of its knowledge: "[O]ther than this lawsuit, and the lawsuits identified in response to Interrogatory No. 13, [HRMC] is not aware of any complaints having been made regarding the services performed by Dr. Hall." [R. 99 at 8]. Having already answered this interrogatory, the motion to compel Interrogatory No. 14 is denied.

**(2)** **Request for Production No. 4**: Please produce documentation which explains HRMC's corporate governance structure as it has existed from January 1, 2013 to the present. This request includes, but is not limited to, any organizational chart(s), annual reports, board of director reports, lists of committee and department names, or documentation of any other nature which describes the structure and governance of HRMC.

Plaintiff finds this information relevant as to whether HRMC negligently failed to oversee and supervise Dr. Hall, and thereby relevant to the allocation of liability. [R. 82 at 4–5]. Plaintiff stresses that a qualified protective order would ensure protection of any confidential documents, and insists HRMC must produce organizational charts and any other documents articulating HRMC's departments and committees. [Id. at 5]. Defendant objects on grounds that the request's language is vague, broad and unduly burdensome, requesting a "broad range of

4

information (all documents that 'explain' HRMC's 'corporate governance structure'), for a three-year period (yet this care was in July 2013)."  [R. 99 at 9].

The central issue is whether radiologist Dr. Hall failed to diagnose the anomaly in Plaintiff's lumbar MRI, but Plaintiff seeks information beyond the scope of what would seem directly relevant to the alleged negligent act.  In short, Request for Production No. 4 is overly broad and burdensome; while Plaintiff contends that the relevance lies in the "indicators of the chain of command and who has supervisory responsibilities for the staff that cared for [Plaintiff] on July 29, 2013," [R. 82 at 5], the request imposes a disproportionate burden upon HRMC, as the hospital would be forced to gather all "organizational chart(s), annual reports, board of director reports, lists of committee and department names, or documentation" from the past three years.  The motion to compel Request for Production No. 4 will be denied.

**(3)**      **Request for Production Nos. 5 and 6**:

REQUEST NO. 5: Please produce copies of any and all contracts, articles, letters, agreements, correspondence and/or any other documents that establish or are otherwise related to the nature, definition, and terms of the business relationship between you and a) Dr. Hall, b) HHS [CHS], c) PBH, d) Dr. Styer, and/or e) Whitaker [National Corporation];

REQUEST NO. 6: Please produce any and all contracts and/or agreements that govern the relationship between HRMC and HHS [CHS].

Plaintiff asserts she is entitled to see any executed contractual agreements and related documents between Dr. Hall, HRMC, CHS, and other named defendants, which govern the nature, definition, and terms of the business relationship.  [R. 82 at 6].  Plaintiff explains that HRMC & CHS are both named insureds, and if these corporate entities have different

responsibilities for different sectors of the hospital, Plaintiff is entitled to learn that information. [Id.].  Much like Request for Production No. 4, seeking to ascertain the corporate governance structure of HRMC, Requests Nos. 5 and 6 are overly broad with regard to the specific negligence allegations against Dr. Hall and HRMC.  Defendant explains that CHS does not operate a hospital nor has any responsibility for any part of the hospital, and even if it did, Plaintiff's claims do not relate to any "different parts of the hospital" whatsoever.  [R. 99 at 10]. The Court is compelled by this information, and finds the requests exceed the permissible scope under Rule 26.

Regarding Request No. 5 specifically, Plaintiff expressed the belief that Dr. Hall's Physician Employment Agreement and Physician Stipend and Recruitment Agreement remain unexecuted; however, HRMC clarifies that because the Physician Stipend and Recruitment Agreement produced by Dr. Hall has in fact been executed, HRMC will now provide Plaintiff with the executed pages of the Physician Employment Agreement, rendering Request for Production No. 5 moot.  Regarding Request No. 6, the Court will not compel production of "any and all contracts . . . that govern the relationship between HRMC and CHS," having learned that CHS shares no responsibilities regarding hospital procedures, and therefore any contracts between CHS and HRMC are largely outside the scope of discovery and would improperly invite a fishing expedition at Defendant's burden and expense.  The motion to compel Request for Production No. 6 will be denied.

**(4)**   **Request For Production No. 9:** Produce a copy of the medical staff bylaws, rules, regulations, guidelines, membership requirements or other written documents governing your medical staff from January 1, 2013 to the present.

Plaintiff seeks production of HRMC's bylaws, rules, regulations, guidelines, and membership requirements governing all medical staff members.  In support, Plaintiff cites to 42 C.F.R. § 482.22, the federal regulation requiring all hospitals to have an "organized medical staff that operates under bylaws approved by the governing body, and which is responsible for the quality of medical care provided to patients by the hospital."  Alleging that HRMC's nurses delayed Plaintiff's MRI and treatment of her progressing paralysis, Plaintiff stresses she is entitled to examine whether or not HRMC and its staff enforced their own rules in administering Plaintiff's radiological services.  [R. 82 at 6–7].  Defendant objects, arguing that Plaintiff seeks "confidential and proprietary documents with no possible relationship to the issues in this case," and stating the request is broad and burdensome on its face.  [R. 99 at 11]. Defendant further argues that no medical staff bylaws, rules, or regulations would "dictate how Dr. Hall is to use his training, experience, and judgment to read diagnostic radiology studies," [R. 99 at 11].

In these circumstances, Dr. Hall's interpretation of Plaintiff's MRI is a matter of personal clinical judgment, weighed against the radiologic standard of care as established by the testimony of experts, and so the relevance of the hospital's rules, regulations, bylaws, and membership requirements of all staff members is questionable.  See, e.g. Andrew v. Begley, 203 S.W.3d 165, 170 (Ky. App. 2006).  Plaintiff brings a direct negligence claim against Dr. Hall, and vicariously against HRMC, but Plaintiff must recognize the difference between her respondeat superior liability claim against HRMC versus alleging the hospital's "failure to enforce hospital rules," a claim separate and distinct from any liability flowing from the doctor's personal liability.  See, e.g., Williams v. St. Claire Medical Center, 657 S.W.2d 590, 594 (Ky. 1983).  Request No. 9 is overly broad and burdensome, where it seeks information relating to the

entire HRMC staff, though the core issue concerns an isolated incident involving a small number of personnel on July 29, 2013.  The motion to compel Request for Production No. 9 will be denied.

**(5)** **Request for Production Nos. 10, 11, 12, 13, 14, and 30**:

REQUEST NO. 10: Produce any and all hospital written protocols, policies, procedures, rules, standards, guidelines, bylaws, regulations, manuals, or any other written routines or instructions in force and effect from January 1, 2013 to the present which explain the jobs, duties and responsibilities of the Radiology Department and all personnel who are assigned to or working in the Radiology Department;

REQUEST NO. 11: Produce any and all standing order and/or protocols in force and effect from January 1, 2013 to the present in the Radiology Department;

REQUEST NO. 12: Produce any and all hospital written protocols, policies, procedures, rules, standards, guidelines, bylaws, regulations, manuals, or any other written routines or instructions in force and effect from January 1, 2013 to the present which explain the jobs, duties and responsibilities of the Emergency Department and all personnel who are assigned to or working in the Emergency Department;

REQUEST NO. 13: Produce any and all standing order and/or protocols in force and effect from January 1, 2013 to the present in the Emergency Department;

REQUEST NO. 14: Produce any and all hospital written protocols, policies, procedures, rules, standards, guidelines, bylaws, regulations, manuals, and other written routine or instructions in force and effect from January 1, 2013 to the present which explain the duties and responsibilities of HRMC employees, agents, and/or independent contractors in complying with

8

the requirements of EMTALA;

REQUEST NO. 30: Please provide a log of or index to the titles of all policies and procedures in place at HRMC from January 1, 2013 to the present.

Plaintiff contends that, as a hospital, HRMC owes all patients a duty to enforce its own rules and regulations, and accordingly, Dr. Hall's conduct as relating to those duties bears directly on the allegations in Plaintiff's complaint.  [R. 82 at 7].  Defendant objects to Request No. 10 on grounds it is overly broad, burdensome, and seeks confidential proprietary information, objects to Nos. 11, 12 and 13 on grounds the information sought lacks relevance, stresses in response to Request No. 14 that HRMC has already produced medical screening triage policies, and objects that Request No. 30 is unduly burdensome.  [R. 99 at 13–14]. Specifically with regard to Request No. 30, HRMC finds Plaintiff's suggestion that the hospital provide her with the "table of contents" for "all policies and procedures in place" understates the burdens of such production, since "HRMC maintains policies and procedures for dozens of departments and units, many of which have [] dozens of policies."  [Id.].  Plaintiff states that HRMC's "policies and procedures are not 'confidential' nor 'proprietary,' but even if they were, HRMC is fully protected by the protective order already in place."  [Id. at 53].  Regarding the burdens of producing hospital protocol and policies, Plaintiff expresses she is "willing to reduce the burden on HRMC by reviewing the tables of contents for the rules applicable to the radiology department and the nursing department, identify[ing] the specific documents she deems relevant and then let[ting] HRMC simply download the specific documents on a thumb drive and be done with the task."  [R. 105 at 52].

Yet even if the hospital's protocols, policies and procedures are not confidential in

nature, their production is beyond the scope of discoverable information and also unduly burdensome to HRMC, calling for production of every document protocol, policies, procedure, rule, standard, guideline, bylaw, regulation, manual, etc., regardless of whether they relate to Dr. Hall or Plaintiff's treating staff members.  The motion to compel Requests for Production Nos. 10, 11, 12, 13, 14 and 30 will be denied.

**(6)** **Request for Production No. 15:** Please produce a log of any and all records HRMC possesses in regard to the daily conduct, tasks, activities and work of Dr. Hall from January 1, 2013 to the present.

Plaintiff contends that great probative value lies in this log of daily tasks and activities, documenting the daily tasks and activities of Dr. Hall from Jan. 1, 2013 to the present, noting Dr. Hall testified in 2014 that, since 2013, records are kept of how many exams he's performed.  [R. 82 at 8–9].  Defendant objects, stating that "it does not maintain or possess a 'log of any and all records [it] possesses' regarding Dr. Hall's 'daily conduct, tasks, activities and work.'"  [R. 99 at 14].   A record of exams performed is entirely different from a log of all of Dr. Hall's daily tasks and activities spanning the past three years, and more importantly, Defendant's response expressly indicates no knowledge of the existence of any such daily log.   [Id.].   The Court concludes that, where the Defendant attests no responsive documents exist with regard to Plaintiff's request, the motion to compel Request for Production No. 15 will be denied.

**(7)** **Request for Production No. 17**: For the time period of January 1, 2013 to the present, please produce copies of the content of all advertisements placed in markets within a fifty mile radius of the HRMC Prestonsburg hospital campus. "Advertisement" shall mean any general communication with the public through mass media, including but not limited to, television

spots, radio ads, billboards, sponsorships of public events, sponsorship of public radio, newspaper ads, mass mail flyers or brochures, web sites or any other method of mass communication.

Plaintiff seeks production of all HRMC advertisements dating back to the beginning of 2013, for purposes of exploring her claim that the hospital violated the Kentucky Consumer Protection Act ("KCPA") by misleading Plaintiff as to the competency and quality of care offered and causing her to suffer an ascertainable loss of money or property.  [R. 82 at 9]. Defendant objects, explaining Kentucky courts have made clear that the KCPA only applies when the alleged actions were part of the "business aspect of the practice of medicine," and "[n]egligently performing surgery or providing treatment that is below the standard of care and failing to inform a patient of such actions are not included in the business aspect of the practice of medicine."  [R. 99 at 15], citing Barnett v. Mercy Health Partners-Lourdes, Inc., 233 S.W.3d 723, 730 (Ky. App. 2007).

While Plaintiff has brought a KCPA claim against HRMC, alleging the hospital's advertisements "are relevant indicators of claims HRMC has made to the public regarding its services," [R. 82 at 9], the Court will not compel three years' worth of advertisements where the scope of such a request is so broad, where the facts concerning whether the ads directly motivated Plaintiff's treatment at HRMC are apparently in dispute, but most importantly, where Plaintiff's medical negligence claim does not qualify as relating to the "business aspect of practicing medicine" according to Kentucky's courts.   "Negligently performing surgery or providing treatment that is below the standard of care" is "not covered under the Act."  Barnett, 233 S.W.3d at 730.  The motion to compel Request for Production No. 17 will be denied.

11

**(8)**     <u>**Request for Production Nos. 18 and 19**</u>:

       <u>REQUEST NO. 18: Please state the name and address of any potential party to the</u> <u>lawsuit not already a party hereto;</u>

       <u>REQUEST NO. 19: Please indicate the name and address of any third party contracting</u> <u>service with whom any person at HRMC would have communicated regarding the admission,</u> <u>treatment, monitoring, and/or discharge of Robyn Bentley on July 20, 2013 or July 28, 2013, or</u> <u>July 29, 2013.  Examples of a "third party" include, but are not limited to, insurance companies,</u> <u>utilization review vendors, consultants, consulting services, etc.</u>

       Plaintiff's issue with respect to these requests does not concern HRMC's objections, but rather, the format in which the document was produced.  [R. 99 at 16].  HRMC has since indicated it will compile the requested information into a .csv format per Plaintiff's request, and will produce this to Plaintiff forthwith, rendering the motion to compel responses to Request for Production Nos. 18 and 19 moot.

**(9)**     <u>**Request for Production Nos. 21 and 22:**</u>

       <u>REQUEST NO. 21: For the time period of January 1, 2013 to the present, please produce</u> <u>copies of your policies describing the creation, storage, maintenance, destruction, and/or deletion</u> <u>of electronic health records. This Request includes, but is not limited to, guidance provided to</u> <u>users regarding the entry and/or deletion of data as well as enterprise-wide guidelines and/or</u> <u>instructions.</u>

       <u>REQUEST NO. 22: For the time period of January 1, 2013 to the present, please produce</u> <u>copies of your policy for protecting the privacy of health information in the medical records</u> <u>collected and maintained by you.</u>

Regarding Requests Nos. 21 & 22, which seek copies of HRMC's electronic health record policy and guidelines to staff, Plaintiff explains that because HRMC owes a duty to enforce its own rules and regulations, Plaintiff is entitled to review the report of user access to her electronic health record in light of the hospital's own rules for who is permitted access to the records.   [R. 82 at 10].   Defendant objects that these requests are "broad and oppressive," stressing that "there is no claim, allegation, indication or even suggestion that HRMC or its staff engaged in improper access of Plaintiff's medical record, performed some alteration of those records, or violated the privacy of her health information."  [R. 99 at 17].

The Court is also confused by Requests Nos. 21 and 22; Plaintiff indeed makes no allegations to remotely suggest that Dr. Hall, HRMC, or any nurse or member of its staff improperly accessed or altered Plaintiff's medical record or otherwise violated the privacy of her health information.  Finding these requests broad and burdensome, as well as irrelevant to the pertinent issues at hand, the Court will not compel this information.  The motion to compel Requests for Production Nos. 21 and 22 will be denied.

**(10)** **Request for Production No. 23:** Please provide copies of any and all documents or records relating to any investigations or inquiries or reviews made regarding Dr. Hall's care or treatment of any patient at any time by any Healthcare-related Entity.  This Request includes, but is not limited to, records reviews, peer reviews, committee reviews, grievance processes, licensure reviews, utilization reviews, patient complaints, or any other type of review involving Dr. Hall's care or treatment of a patient.  This Request includes, but is not limited to, correspondence, notes, meeting notes, handwritten notes, reports, recommendations, memoranda, receipts, etc.  This Request includes documents and/or tangible things that discuss, refer to, or

13

relate to the investigation or inquiry or review of services performed by Dr. Hall.

Plaintiff seeks copies of records regarding any investigations or reviews of Dr. Hall's care or treatment of any patient, such as peer reviews, utilization reviews, and patient complaints in hopes of establishing any known error rates or known trends in Dr. Hall's image readings. [R. 82 at 11]. Defendant objects:

> As it stated in response to Interrogatory No. 14, HRMC is not aware of any complaints made regarding Dr. Hall's care. Out of the thousands of images he has interpreted at HRMC, he has only been party to two other suits, both of which are being litigated, and in which he has denied any liability. The only potential "review" regarding Dr. Hall would be related to the credentialing and re-credentialing process. Thus Plaintiff uses this request as a disguise to obtain materials to which she is not entitled, as they could only be relevant to a claim for "negligent credentialing" that does not exist under Kentucky law.

[R. 99 at 18]. The Court understands from the parties' briefings that they dispute the issue of whether Plaintiff's negligent hiring and supervision claim effectively sets forth a "negligent credentialing" against HRMC, a claim which case law suggests does not presently exist under Kentucky law. [Id.]. Yet where the information related to a "negligent credentialing" claim versus a "negligent hiring and supervision" claim greatly overlaps, rather than addressing whether Plaintiff's requests pursue one claim or the other, the Court will simply address the requests as they pertain to the general relevance and proportionality requirements of Rule 26.

In short, Defendant asserts, "HRMC is not aware of any complaints made regarding Dr. Hall's care. [R. 99 at 18]. Defendant avows no such peer review records or documentation exists, but even if they did exist, the Court would scrutinize the broad scope and nature of this request which seeks documents "regarding any investigation, review or inquiry performed by any healthcare provider regarding Dr. Hall's services to any patient at any time." [Id]. Regardless, HRMC avows is has no knowledge of other complaints regarding Dr. Hall's claim,

14

and the Court concludes there is nothing to produce in response to this request. Request for Production No. 23 will be denied.

**(11)** **Request for Production No. 27:** Please provide a log of the documents to be maintained in a credentialing file or an employment file at HRMC.

Plaintiff alleges that HRMC's staff "did not ensure Ms. Bentley's stat MRI was performed *stat*" and that Dr. Hall misread the MRI when it was finally performed, and therefore Dr. Hall's credentialing file and the personnel files of nurses who cared for Plaintiff are all relevant. [R. 105 at 11]. Defendant objects to Request No. 27 on grounds of relevance, finding the request bears "no rational relationship to the issues at stake." [R. 99 at 19]. Defendant further responds that, "while HRMC has checklists it uses for the personnel files of new hires, it has no log of documents that are maintained in employment files." [R. 99 at 18].

Although Plaintiff contends that HRMC deliberately misreads her request by attesting it has no log of such documents maintained in employment files, [R. 82 at 11–12], the Court cannot compel what HRMC proclaims is not in their possession nor require it to create documents that do not presently exist. The federal rules of civil procedure dictate that parties must produce only discoverable items if they "are already in existence." Harris v. Koenig, 271 F.R.D. 356 (D.D.C. 2010). The motion to compel Request for Production No. 27 will be denied.

**(12)** **Request for Production No. 32:** Please provide copies of any and all documentation related to any investigation or charge brought against you by any accrediting organization(s) or association(s), any state entity, and/or any federal entity for the years 2010 through the present.

Plaintiff asserts that, if any investigations or charges relate to the type of care that was rendered to Plaintiff then these documents would be relevant, and the production of this

15

information is important and would not be burdensome or expensive. [R. 82 at 12]. Defendant objects that "documentation regarding accreditations and investigations of HRMC's hospital operations has no possible relevance to issues at stake," and accordingly Request No. 32 is "far out of proportion to the facts of the case, and is completely irrelevant to her claim." [R. 99 at 19].

Plaintiff alleges that HRMC's staff delayed the performance of her stat MRI and that Dr. Hall misread the MRI once the procedure finally took place, thereby putting HRMC's nursing and hospital operations at issue in the amended complaint. Yet even where tangentially relevant to the negligence allegation against HRMC nurses and staff, a request for five years' worth of documents with any possible information as to whether "prior investigations revealed issues relevant to Ms. Bentley's care . . . went uncorrected through 2013," [R. 105 at 12], is too general, disproportionate, and broad in scope under Rule 26. Without a more narrowly-tailored request, the burdens of producing documents related to five years of investigations against HRMC, the majority of which would presumably be unrelated whatsoever to Plaintiff's services by Dr. Hall, are excessive. Motion to compel Request for Production No. 32 will be denied.

**(13)**     **Request for Production Nos. 34 and 35:**

REQUEST NO. 34: For the time period of January 1, 2013 through the present, please produce copies of all written guidelines, policies, procedures and/or protocols and any and all other written documentation that sets forth and/or addresses the duties of the following committees: a) Customer Grievance Review Committee; b) Quality Improvement Committee; c) Patient Safety Committee; d) Performance Improvement Committee; e) Medical Staff Executive Committee; f) Peer Review Committee; and g) Credentialing Committee.

REQUEST NO. 35: For the time period of January 1, 2013 through the present, please produce documentation identifying the committee members, including the chairperson, of the following HRMC Committees, including a description of each committee's scope and purpose: a) Customer Grievance Review Committee; b) Quality Improvement Committee; c) Patient Safety Committee; d) Performance Improvement Committee; e) Medical Staff Executive Committee; f) Peer Review Committee; and g) Credentialing Committee.

Defendant objects, stressing this information "has no possible relevance," and Plaintiff "should not be permitted to obtain far-ranging discovery of all safety efforts of all of HRMC's committees for a three-year period." [R. 99 at 20]. Again, the Court is unwilling to presently determine at this juncture whether Plaintiff's claim that "HRMC 'negligently supervised' Dr. Hall's radiology services is a disguised claim for negligent credentialing, which does not exist in Kentucky." [Id. at 18]. However, finding the scope of this information overly broad and its production burdensome to HRMC, the Court will deny Requests Nos. 34 and 35 on that basis. Requests Nos. 34 and 35 are disproportionately broad and burdensome by seeking documents from a three-year period which set forth all duties of the seven different committees, all their written guidelines, policies, procedures and/or protocols, and a list of members for each committee. [R. 99 at 20–21]. Where such information would at best be tangentially related to Dr. Hall's personal clinical judgment in reading Plaintiff's MRI in 2013, the motion to compel Requests for Production Nos. 34 and 35 will be denied.

**(14)** **Request for Production No. 37**: Please produce the personnel files of the individuals, including, but not limited, to nurses, residents, and/or physicians who rendered treatment to Robyn Bentley, including, but not limited to, any comments, complaints, or disciplinary action

concerning the individuals.

Request for Production No. 37, as well as Requests Nos. 40 and 41 (discussed further below), seek copies of the personnel files of all persons who rendered care to Ms. Bentley. HRMC objects on grounds Request No. 37 "would entail significant burdens for HRMC, and would implicate important personal privacy concerns for its staff." [R. 99 at 21]. Plaintiff states she willing to limit the requested nurse personnel files "to those of Sevetta Little and TaSheena Spradlin" regarding the allegations that HRMC staff delayed performing Plaintiff's stat MRI, and once completed, the MRI was misinterpreted by Dr. Hall. [R. 105 at 13].

Where the negligence of Dr. Hall and HRMC's nurses that treated Plaintiff are pertinent matters that have been placed at issue, the Court finds this information sufficiently relevant and not overly burdensome, and will grant Plaintiff's request to compel their production. Unlike many of Plaintiff's previous requests, the personnel files of Dr. Hall and nurses Little and Spradlin are appropriately narrow in scope and are likely relatively easy to produce, and the Court agrees that these files could carry probative value as to the competency, training, and education of Dr. Hall and his nurses in terms of stat diagnostic imaging and neurological treatment. Where this request is not a fishing expedition but a legitimate inquiry into Plaintiff's treating personnel upon her visit to HRMC, Request for Production No. 37 will be granted.

**(15)** **Request for Production No. 38:** Please produce copies of all board minutes, committee minutes, written reports and/or any written documentation, or any nature whatsoever, concerning the Plaintiff and/or any of the named Defendants.

Request No. 38 seeking copies of committee minutes and written reports regarding the Plaintiff, Dr. Hall, and any other Defendants in the matter, to illuminate possible issues of job

performance and fitness for duty where relevant.  [R. 82 at 14].  Defendant objects, arguing Request No. 38 is "overly broad and unduly burdensome on its face, as it seeks a large category of documents 'concerning' Plaintiff or any other Defendant, including Dr. Hall."  [R. 99 at 22], and further objects on confidentiality grounds.

While the Court does not share HRMC's confidentiality concerns, agreeing these concerns can be assuaged through a protective order, the Court does find Request No. 38's broad scope exceeds the boundaries of Rule 26.  Request No. 38 seeks the minutes of all meetings and written reports, of "any nature whatsoever," with regard to Dr. Hall, Plaintiff, or any Defendant in the matter, with no limits as to time or subject matter.  Where these minutes and reports could theoretically concern an endless array of topics and span vast periods of time, the proportionality and probative value of such information is outweighed by the burdens of production.  Motion to compel Request for Production No. 38 will be denied.

**(16)** **Request for Production Nos. 40 and 41:**

REQUEST NO. 40: Please produce copies of your guidelines, instructions, policies and/or procedures relating to the credentialing or recredentialing process, including but not limited to those regarding the appointment of medical staff, delineation of clinical privileges, reappointment, access to credentialing files, and the required contents of credentialing files.

REQUEST NO. 41: Please provide HRMC's complete records relating to the granting, limiting, suspension, or revoking of privileges to Dr. Hall. This Request includes, but is not limited to, the application for privileges, all renewal applications, as well as a complete and accurate copy of the complete credentialing file for Dr. Hall.

Plaintiff explains that, by acquiring Dr. Hall's credentialing file and the information

sought in Requests for Production Nos. 40 and 41, Plaintiff may be able to ascertain whether HRMC adhered to its own rules while credentialing Dr. Hall and discovery the existence of any known quality issues pertaining to performance of his job duties.  [R. 82 at 15].  Defendant again objects on grounds that Requests Nos. 40 and 41 are broad and unduly burdensome, and again presents the argument that "Plaintiff is trying to pass off a negligent credentialing claim as something else, to obtain discovery to which she would otherwise not be entitled.  [R. 99 at 23].

While unwilling to deny Request for Production No. 40 on grounds it may or may not relate to a cause of action unrecognized by Kentucky courts, the Court will deny Request No. 40 on grounds it is excessive in scope by seeking all of HRMC's credentialing processes rather than processes specific to Dr. Hall.  Any possible relationship between HRMC's credentialing processes or hiring standards, aside from those specifically related to Dr. Hall, are beyond the relevant scope of discovery.  The Court agrees that Plaintiff's request for the "internal, confidential and proprietary business documents concerning every element of HRMC's credentialing process, for all physicians," [R. 99 at 22], exceeds the scope of discoverable information in this case.  For this reason, motion to compel Request No. 40 will be denied.

However, Request No. 41 is far more narrowly tailored, requesting the associated privileges and a complete, accurate copy of the complete credentialing file for Dr. Hall specifically.  Unlike Request No. 40, Request No. 41 is much more reasonable in scope and far more relevant to the negligent hiring and supervision claim against HRMC, as it pertains to the hospital's procedures in hiring Dr. Hall.  For this reason, motion to compel Request for Production No. 41 will be granted.

**(17)** **Request for Production Nos. 44, 45, 46 and 47:**

20

REQUEST NO. 44: Please produce any DNV GL report of violations, inspections, scores, limitations, conditions, or provisional, and/or notices of revocation, and/or suspension of accreditation directed to you;

REQUEST NO. 45: Please produce all DNV GL accreditation reports or re-accreditation reports from January 1, 2010 to the present;

REQUEST NO. 46: Please produce all DNV GL survey/inspection findings reports from January 1, 2010 to the present;

REQUEST NO. 47: Please produce all DNV GL evidence of standards compliance reports from January 1, 2010 to the present.

Plaintiff requests copies of documents regarding accreditation of HRMC, stating that the standards set by accreditation organizations such as DNV Healthcare, Inc. and Joint Commission are relevant in Kentucky medical malpractice action, and have probative value regarding the circumstances under which Plaintiff's treatment took place. [R. 82 at 16]. Defendant objects, finding this information has no possible relevance. [R. 99 at 23–24]. Defendant explains:

> As HRMC stated in its response to these requests, DNV Healthcare, Inc. accredited HRMC at the time of Plaintiff's care. DNV did not inspect HRMC, or take any action regarding its accreditation, in any way related to Plaintiff's care. In fact, no part of the accreditation or inspection process evaluates whether radiologists correctly interpret images such as MRIs. Dr. Hall's interpretation of Plaintiff's lumbar MRI is truly the only issue, and only allegation of negligence, at stake.

[Id.]. Based on Defendant's objection, the Court agrees the requested information is well beyond the scope of discoverable information. DNV Healthcare, Inc.'s ties to this case are minimal, and because Plaintiff brings no direct claims against DNV Healthcare, Inc., the Court fails to see how DNV's credentialing process would pertain to Plaintiff's claims. Motion to compel Requests for

Production Nos. 44, 45, 46, and 47 will be denied.

**(18)   Request for Production No. 48:** Produce any and all queries, reports, records, documents, data and/or information you have received regarding Dr. Hall from the National Practitioner Data Bank or any other reviewing body of any sort.

Plaintiff seeks copies of any information HRMC has received from the National Practitioner Data Bank ("NPDB") regarding Dr. Hall, in order "to collect and release certain information relating to the professional competence and conduct of physicians," adding NPDB clearly contemplates the usage of such data in negligent hiring and supervision claims. [R. 82 at 16–17]. In response, HRMC objects that "Federal law specifically prohibits the disclosure of these documents," per 42 CFR § 60.20. Plaintiff replies she can make her own request to the NPDB if HRMC pursuant to 45 C.F.R. § 60.18(a)(v), in the event HBMC has failed to request the NPDBs reports as part of its credentialing process,. [R. 105 at 16–17].

Upon review of the provisions in § 60.20, the Court is persuaded by HRMC that the hospital "is expressly prohibited from disclosing the information Plaintiff seeks," and "no exception would permit [HRMC] to do so, without exposing itself to significant monetary penalties." [R. 99 at 25]. While Plaintiff's counsel adds she could alternately request the information directly from NPDB, 42 C.F.R. § 60.18 requires she first submit evidence that the hospital failed to request information from the NPDB per 42 C.F.R. § 60.17; Defendant avows it did request this information, and that the Data Bank reports were consistent with Dr. Hall's qualifications and training and indicated no issues concerning Hall. [R. 99 at 45]. Regardless of whether Plaintiff is ultimately able to acquire this information independently of HRMC's cooperation, the fact that HRMC's direct disclosure of this information is federally prohibited

22

remains undisputed.  Where Defendant would be subject to civil penalties upon violating 42 CFR § 60.20, the Court will not order production of these NPDB reports.  The motion to compel Request for Production No. 48 will be denied.

IT IS HEREIN ORDERED that Plaintiff's Motion to Compel [R. 82] shall be GRANTED IN PART, and DENIED IN PART.  Requests for Production Nos. 37 and 41 shall be granted, while the remainder of the interrogatories and requests to which Defendant HRMC has objected shall be denied.

Signed February 23, 2016.

Signed By:

*Edward B. Atkins*  ℰβ𝒜

United States Magistrate Judge