UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

CIVIL ACTION NO. 7:15-cv-97-ART-EBA

ROBYN BENTLEY,                                                                                     PLAINTIFF,

v.                                             **ORDER**

HIGHLANDS HOSPITAL
CORPORATION, et al.,                                                                            DEFENDANTS.

\*\*\* \*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the undersigned on the Defendants Highlands Hospital Corporation, Paintsville Hospital Company, LLC, Thomas B. Styer, and Whitaker National Corporation's Motions to Strike Plaintiff's Supplemental and Expert Disclosures, [Rs. 235, 238, 239], and Defendant Terry D. Hall's Motion for Joinder of Defendants' Motions to Strike. [R. 240]. The Defendants collectively object to the supplemental reports of Plaintiff's expert witnesses – medical billing and coding expert Rebecca Reier, Associate Professor of Nursing Patricia Bartzak, radiologist Dr. Joel Bowers, hospital management expert Richard Schmidt, and neurologist Dr. Robert DeLorenzo – which Defendants allege are not truly supplemental under the spirit of Fed. R. Civ. P. 26(e)'s supplementation requirement, but rather, improperly introduce wholly new allegations and theories of liability. [Id.].

The District Court previously granted in part Plaintiff's motion to extend discovery, see [R. 138], and established new expert disclosure deadlines: Plaintiff's expert disclosures were due by March 11, 2016, and Defendants' expert disclosures were due by April 8, 2016. All parties were required to disclose any supplementation by April 29, 2016. [Id.]. The District Court then issued a subsequent Order, see [R. 195], extending the deadline for all fact and expert discovery to June 30, 2016, but leaving the previous expert disclosure and supplementation deadlines in

1

place.  Plaintiff's expert disclosures were timely made on March 11, 2016, [R. 152], and Defendants' expert disclosures were timely made on April 8, 2016.  [Rs. 179, 180, 182, 183].  However, beginning on April 21, 2016, Plaintiff began providing a number of "supplemental," "amended," and "rebuttal" expert disclosure reports, some of which were filed past the April 29, 2016 supplementation deadline.  The nature and timing of these additional expert opinions, which Plaintiff alleges are supplemental in nature, are now the subject of Defendants' motions to strike.

Defendants object that these five allegedly "supplemental" opinions were untimely in that they are not truly supplemental, thus depriving them of the opportunity to have full disclosure of the plaintiff's experts opinions by the March 11 deadline.  Defendants stress that, under Fed. R. Civ. P. 26(e), an expert witness may only supplement his or her original report to "correct or supplement incorrect or incomplete information that was not available at the time of the initial disclosure."  James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC, 2014 WL 1664263 at *9 (E.D. Ky. Apr. 25, 2014).  Defendants note that, "[w]hen it appears a later report may not be a supplement, but is rather a new opinion not timely disclosed, the salient question is whether the report truly qualifies as 'supplemental.'"  American Nat. Prop. & Cas. Co. v. Stutte, 2015 WL 2095868 at *3 (E.D. Tenn. May 5, 2015).

In response, Plaintiff objects that Defendants failed as an initial matter to attempt to confer with Plaintiff to resolve the matter pursuant to LR 37.1. [R. 251 at 2–4].  In addition, Plaintiff asserts that the five reports at issue were properly based on the experts' previous opinions, and Plaintiff asserts there is no resulting prejudice that cannot be cured prior to the close of discovery by allowing the Defendants to re-depose Plaintiff's experts.  In support, Plaintiff cites to a Sixth Circuit opinion, Howe v. City of Akron, 801 F.3d 718 (6th Cir. 2015).

In order to assess whether a party's omitted or late disclosure is "substantially justified" or "harmless," the Sixth Circuit in <u>Howe</u> adopted the Fourth Circuit's consideration of five factors: (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence. <u>Howe</u>, 801 F.3d at 747–48.

This matter came before the undersigned for a hearing on June 10, 2016. [R. 281]. During the hearing, Defendants collectively stated that they do not seek an opportunity to file any reply to Plaintiff's response opposing the motions to strike. Plaintiff's counsel meanwhile argued that Defendants' motions to strike were unfounded, where they have suffered no prejudice, and adding that Defendants in fact failed to even mention "prejudice" at all in their motions.[1] Despite this incorrect contention, and Plaintiff's further contention that Defendants failed to comply with LR 37.1 by failing to first confer with Plaintiff's counsel to resolve this dispute, <u>see</u> [R. 251 at 2–3], Plaintiff without leave continues to file additional briefing on the issues now before the Court, <u>see, e.g.</u>, [R. 283], which were not requested by the Court or authorized by the Federal Civil Rules or Local Rules, following the hearing. Nevertheless, the Court has considered the Plaintiff's additional filings on these issues, giving due consideration to the arguments presented therein. Now, having taken this matter under advisement following the hearing, [R. 281], and for the reasons set forth below, the undersigned shall grant in part and deny in part Defendants' Motions to Strike.

---

[1] E.g., Defendants Styer and Whitaker explicitly argue in their motion to strike that Dr. Bowers' amended report is "untimely and prejudicial." [R. 239 at 4]. Likewise, the Defendants Highlands and Paul B. Hall assert that the Plaintiff's efforts to file additional reports amounts to nothing less than an effort to "ambush" or "sandbag" the Defendants. [R. 235 at 11; 238 at 2, 10].

3

**REBECCA REIER**

Ms. Reier's original report was served on the March 11, 2016 deadline, and an additional report was served on April 29, 2016, the deadline for supplementation.  She was then deposed on May 6, 2016.  [R. 251 at 8].  PBH moves to strike the additional report, contending that while technically timely filed as a supplementation, "Ms. Reier's supplemental opinions are not based on 'incomplete or incorrect' information, but instead, are an untimely new expert report violating Rule 26(a)."  [R. 238 at 5].  PBH objects that Ms. Reier's supplemental report "altered some pricing information," and also "added the wholly irrelevant and prejudicial statement that PBH was the most expensive level 4 emergency room and provider of lumbar CT 9 scans in the state." [Id.].  Plaintiff responds that the report's changes in pricing information are insignificant, while the latter statement is a "factual statement based upon the data exhibits appended to her timely-made supplemental report."  [R. 251 at 8–9].

The Court will not strike Ms. Reier's supplemental report.  The few additions in her supplemental report regarding inflated costs were merely expounded upon the original allegations regarding PBH's allegedly inflated charges.  In applying the Howe factors, the surprise to Defendants due to the supplemental statements regarding PBH's allegedly inflated medical charges is minimal.  Secondly, although Defendants contend that they lacked the reasonable opportunity to cure any surprise, Ms. Reier's opinions appear to be obvious conclusions that might be inferred by any party previously based on information equally available to all. Third, there is practically no risk of disrupting trial by permitting Reier's supplemental report.  Fourth, the importance of the additional evidence does directly pertain to Plaintiff's inflation claims against PBH, thereby weighing in favor of its inclusion.  Fifth and

4

finally, while there is little explanation offered regarding Plaintiff's failure to disclose these opinions at an earlier time, the undersigned finds that the lack of surprise to the Defendants indicates that all parties had an opportunity to address the issues to which she would testify. The Court accordingly denies Defendants' motions to strike as they pertain to Rebecca Reier's April 29, 2016 supplemental report.

## PATRICIA BARTZAK

Nurse Bartzak's initial report was served on March 11, 2016, and an additional report was served on April 29. Her deposition was taken on April 22, 2016, one week prior to the supplemental report. [R. 251 at 9]. HRMC objects to Ms. Bartzak's "supplemental" report where it corrects the name of a treating nurse who was incorrectly identified in her original report but also "attempts to make several changes to the single paragraph of the March 11 report regarding HRMC [], criticizing Ms. Little's care and alleged lack of collaboration with Ms. Spradlin." [R. 235 at 5]. HRMC further objects that Ms. Bartzak's supplemental report "add[s] a second paragraph full of new criticisms of HRMC's nursing care," adding that "nowhere in Ms. Bartzak's report of March 11 did she state any of these findings." [Id.].

Defendant PBH also objects to Bartzak's supplemental report contending that while technically timely, the report adds "several new statements claiming to be examples of Defendant's 'disregard for Ms. Bentley's reporting of her symptoms and the severity of her pain,'" [R. 238 at 4], arguing these additions are nothing more than new opinions based on the exact same information available to Bartzak before her initial report of March 11, 2016. [R. 238 at 4]. Plaintiff responds that, "[a]pplying the *Howe* factors, there was no surprise because HRMC "knew of Ms. Bartzak's error and pointed it out to her," and "had the opportunity to cure

any surprise and question her about her criticisms of the nurse (using her correct name) and chose not to," noting that the "trial will not be affected at all." [R. 251 at 12].

However, although the supplemental report's correction of the treating nurse's name is generally innocuous, and constitutes an appropriate supplementation of previous information which later proved inaccurate, the Court will nevertheless still strike the remaining portions of Ms. Bartzak's supplemental report due to the "further examples of disregard" added therein. [R. 238 at 4]. Applying the Howe factors, the surprise caused by Bartzak's new "examples of disregard" based upon Bentley's "symptoms and the severity of her pain" is substantial, [R. 235-5 at 5]; moreover, Defendants' ability to cure this surprise was practically non-existent where the report and additional opinions were disclosed either through report or deposition after the Defendants' deadline to provide expert disclosures. To allow Ms. Bartzak's new opinions would threaten disrupting the October 3, 2016 trial date, [R. 107], where, in fairness, Defendants should have been provided this information in time to allow their own experts to review and comment as to Bartzak's additional opinions. Regarding the fourth Howe factor – the importance of the evidence – Bartzak's new theories regarding PBH's allegedly substandard level of care are important, adding additional instances of allegedly substandard quality of medical treatment. The importance of the evidence to the Plaintiff is outweighed under the Howe analysis, because the prejudice caused to Defendants is real, and the risk of delaying trial due to the need to address these new opinions is obvious. Though Plaintiff states this supplement is merely correcting a "mistake arising out of HRMC's own records," [R. 251 at 12], her response fails to explain her untimely disclosure of Bartzak's new theories of inadequate care based upon Bentley's perceived pain levels while at HRMC. In short, Ms. Bartzak's supplemental report is not truly

6

supplemental, but instead constitutes new opinions that should have been disclosed at an earlier time. As a result, Patricia Bartzak's April 22, 2016 supplemental report will be stricken.

**JOEL BOWERS**

Dr. Bowers' initial report was timely served on March 11, 2016; however, he submitted an amended report on May 23, 2016, prior to his scheduled deposition on May 25, 2016, and nearly a month after the Court-imposed April 29, 2016 supplementation deadline. [R. 251 at 5]. HRMC now objects that Bower's amended report contains two wholly new opinions: (1) that a reasonably prudent radiologist under similar circumstances should have formed a differential diagnosis with transverse myelitis as the most likely diagnosis; and (2) that Ms. Bentley's MRI should have been prioritized such that only a stroke patient should have received an MRI ahead of her. [R. 235 at 6]. PBH also objects to Bowers' amended report, noting that these additions "appear[] to be based on the same information available to Dr. Bowers prior to his original disclosure filed almost three months ago." [R. 238 at 6]. Plaintiff responds that there is no surprise; "Defendants have known from the beginning of the case the Plaintiff contends that Ms. Bentley's physical symptoms and the results of the MRI should have alerted the Defendants to the onset of transverse myelitis." [R. 251 at 6]. Plaintiff adds that "Bowers' deposition could have been rescheduled" to cure any such surprise. [Id. at 6–7].

The Court will strike Dr. Bowers' supplemental report due to his newly-added recommendations that a lumbar MRI should have been ordered – an additional theory going beyond his original opinion that a thoracic MRI should have been ordered – and his new inclusions regarding what a "reasonably prudent radiologist acting under similar circumstances." [R. 235-7 at 3]. The surprise caused by Bowers' new opinions, guided by the "reasonably

7

prudent radiologist" standard, is clearly substantial, and Defendants' ability to cure such surprise was minimal, where the Defendants were not fairly informed of his opinions in time to provide the information to their experts to consider and comment upon. The Plaintiff's contention that any prejudice, again, can be cured by merely deposing Bowers for a second time fails to achieve the fundamental fairness sought to be achieved by providing for the orderly disclosure and discovery of expert reports and opinions. As Defendants Styer and Whitaker stress in their motion to strike, Bowers' amended report was filed "nearly a month after the Court's deadline for supplementation of experts," and "nearly six weeks after Defendants' expert disclosures." [R. 239 at 3].

Furthermore, the Court's failure to strike the amended report would risk disrupting trial under the Howe analysis. The importance of Bowers' amended opinions is significant, because Bowers directly speaks as to how Dr. Hall should have prioritized Bentley's MRI, and what a reasonably prudent doctor would have done; these new inclusions, absent from Bowers' original report, now prejudice the Defendants who do not have the time needed to update their own expert opinions accordingly. Still, the Howe factors essentially serve as a balancing test, and where Bowers' new opinions are seemingly based on the same information referenced in his original report, the prejudice and surprise imposed upon Defendants outweighs the value of Bowers' amended report.

Regarding an explanation for her failure to disclose, Plaintiff argues this "malpractice case is exceedingly complex, involving dozens of experts and witnesses," noting that the parties "have been operating under short deadlines that have had to be extended on more than one occasion." [R. 251 at 7]. Nevertheless, to permit the inclusion of Dr. Bowers' amended report, filed a month beyond the supplementation deadline, certainly prejudices those Defendants faced

with these new allegations, particularly where discovery is scheduled to end on June 30, 2016. [R. 195]. The Court ultimately finds no good cause to excuse Plaintiff's untimely filing of the May 23, 2016 amended report, which Plaintiff acknowledges was filed well past the supplementation deadline. As Defendants note, the duty to supplement under Rule 26 is not a "declaration of open season for experts to undertake new analyses or to evolve their opinions." [R. 235 at 7], citing <u>American Nat. Property</u>, 2015 WL 2095868 at *4. Dr. Bowers' amended reports violate this proposition, and will be stricken accordingly.

## **RICHARD SCHMIDT**

Mr. Schmidt's original report was timely served on March 11, 2016, and his supplemental report was timely served on April 29, 2016. Mr. Schmidt was deposed on May 3, 2016, but his deposition was not completed, and the parties will reconvene on June 22, 2016. [R. 251 at 13]. HRMC argues that Mr. Schmidt's supplemental report offers new opinions which are not truly supplemental in nature. Namely, the supplement adds that Dr. Hall's financial compensation was tied to the number of films he read per year, creating an incentive to read more films "at the expense of accuracy," and also states an entirely new opinion: the employment contract "does not reflect any analysis regarding issues of quality implicated by a large quantity of reads." [R. 235 at 3]. PBH similarly objects that Mr. Schmidt's supplement "alter[s] his negligence opinion to that of retention instead of hiring and also add[s] that it was improper for PBH staff to seek consent to treatment from Plaintiff while she was experiencing pain rated as 10/10." [R. 238 at 5].

Plaintiff responds that Schmidt's addition regarding the "issues of quality implicated by the large quantity of reads" is ultimately "not a 'new' opinion, but an explication of his existing

9

opinion which arose out of the questions posed by defense counsel during Mr. Schmidt's deposition. [R. 251 at 14]. Plaintiff argues that, under the Howe factors, "there is no surprise because the 'new' opinions merely clarify the original report," and "[i]f there was surprise, it is easily cured." [Id. at 15]. Plaintiff adds that "[t]rial will not be delayed," "the opinions are important to the case," and "there is no failure to comply with the deadlines imposed by the Court." [Id.].

The undersigned disagrees. Mr. Schmidt's addition of a new theory of liability – PBH's negligent retention of Dr. Styer – clearly constitutes surprise and renders PBH unable to cure the surprise, given the current discovery deadlines. Similarly, Schmidt's inclusion regarding the quality implications behind Dr. Hall's film readings constitutes an entirely new claim as opposed to the mere supplementation of previous information. While these additions are marginally important to Plaintiff's primary medical malpractice claims, the Court would risk delay of trial were it to allow the supplemental report.

Moreover, the fact that the parties will reconvene on June 22, 2016, to complete Mr. Schmidt's deposition does not effectively cure Plaintiff's delayed disclosure or the resulting prejudice to Defendants. Finding no particularly compelling explanation for Plaintiff's failure to disclose these significant new opinions prior to the April 29, 2016 supplementation deadline, the Court will strike Mr. Schmidt's supplemental report.

**ROBERT DELORENZO**

Dr. DeLorenzo's original expert report was timely disclosed on March 11, 2016. [R. 251 at 15]. On April 21, 2016, following the Defendants' deadline to provide expert disclosures, Plaintiff supplemented Dr. DeLorenzo's report with what Defendant PBH alleges were "wholly

new opinions on an entirely new issue:" his opinion "that Plaintiff did not possess the mental capacity on February 11, 2014 through February 19, 2014 to make business and/or legal decisions." [R. 238 at 3]. PBH explains that, "[t]wo and a half weeks later, on May 9, 2016, Plaintiff file[d] yet another report on behalf of Dr. DeLorenzo styled a 'rebuttal' expert disclosure report." [R. 238 at 3]. PBH now moves to strike both the supplemental and rebuttal report, arguing that "Dr. DeLorenzo's 'supplemental' and 'rebuttal' reports are nothing more than an untimely disclosed expert opinion and should be barred as such per FRCP 26(a)." [R. 238 at 4].

In response, Plaintiff explains that, on April 8, 2016, PBH served its expert disclosure for Dr. Robert Kuhn, "who opined that, despite all the medication, Ms. Bentley did have the mental capacity to make independent decisions including business and legal transactions." [Id. at 16]. Upon determining that its expert Dr. DeLorenzo, a pharmacology expert, was "qualified to opine upon Ms. Bentley's capacity to sign the release," [R. 251 at 16], Plaintiff "served a rebuttal report, authored by Dr. DeLorenzo, refuting the conclusions reached by Dr. Kuhn" on May 9, 2016. [Id.]. Plaintiff seeks to defend the untimely filing of DeLorenzo's rebuttal report, arguing that his rebuttal expert report properly adhered to the 30-day time limit set forth in Fed. R. Civ. P. 26(A)(2)(D)(ii), which Plaintiff concludes is applicable because the Court's Scheduling Order did not explicitly address or set deadlines for rebuttal report disclosures. [R. 251 at 16].

Aside from the fact that DeLorenzo's May 9, 2016 rebuttal report was clearly untimely, filed nearly one month beyond the supplementation deadline, the Court is far more concerned about DeLorenzo's new capacity-related opinions, which were absent from his original report yet were the subject of both his supplemental and rebuttal reports. DeLorenzo's new opinions, finding that Bentley lacked the mental capacity to sign the release with PBH and to otherwise

11

make independent decisions, clearly constitute surprise under Howe, and once again, any opportunity for the Defendants to cure this surprise and adequately address the new capacity claims is negated by Plaintiff's delayed disclosures and severely limited by impending discovery deadlines.  The Court runs the risk of disrupting the trial date by permitting either of DeLorenzo's additional reports, and while these capacity opinions are potentially important, their importance is limited to Bentley's signing a release with PBH and generally outweighed by the potential prejudice and delays.

Plaintiff's response contends that, "[b]ecause everything that Paul B. Hall objects to as late in the Supplemental Report is also contained in the timely Rebuttal Report, Paul B. Hall's objections to the Supplemental Report are moot," noting that "even if the Supplemental Report was improper, the Rebuttal Report was not" under Rule 26(A)(2)(D)(ii).  [R. 251 at 16–17].  The undersigned reiterates that, while the timeliness factor is concerning, DeLorenzo's supplemental and rebuttal reports will both be stricken primarily due to the new capacity claims therein which are hardly supplemental in nature.  Plaintiff is incorrect in assuming that, because the Court did not explicitly address rebuttals in its Scheduling Order, the rebuttal deadlines natural extend beyond the supplementation deadlines under the Federal Rules of Civil Procedure.  On the contrary, the Court's expert disclosure deadline was the intended cutoff for new claims or opinions, with the supplementation deadline to serve as a final cutoff point for minor additions or corrections of experts' original opinions.

Under Plaintiff's approach, Defendants would still be permitted to file their own rebuttals within the 30-day window allotted by Rule 26, despite the fact that discovery is scheduled to close on June 30, 2016.  Such an approach is clearly contrary to the Scheduling Order deadlines.  Despite Plaintiff's arguments regarding timeliness, the Court will strike the supplemental and

rebuttal opinions of Dr. DeLorenzo not because they were untimely (although they were), but because they introduce an entirely new claim in violation of the supplementation permitted under Rule 26.

Further, where opinions regarding the Plaintiff's mental capacity have already been established by two of Plaintiff's other experts, Dr. Betz and Dr. Grimm, and therefore "Dr. DeLorenzo's new opinion is unnecessarily cumulative of the opinions proffered by Dr. Grimm and Dr. Betz." [R. 238 at 3].

Ultimately, the determinative question regarding whether Plaintiff's five additional expert reports should be stricken is whether the reports truly qualify as "supplemental." American Nat. Prop., 2015 WL 2095868 at *3. With the exception of Rebecca Reier, the undersigned has determined Plaintiff's additional expert reports are not truly "supplemental," where they introduce entirely new arguments and theories of liability, based upon evidence which was arguably available to the experts "at the time of the initial disclosure." James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC, 2014 WL 1664263 at *9 (E.D. Ky. Apr. 25, 2014). Where Defendants generally had no prior knowledge or reason to anticipate these new opinions and claims, they would be prejudiced by the inclusion of these subsequent opinions. Accordingly, having considered the matter fully, and being otherwise sufficiently advised,

IT IS HEREIN ORDERED that Defendants Highlands Hospital Corporation, Paintsville Hospital Company, LLC, Thomas B. Styer, and Whitaker National Corporation's Motions to Strike Plaintiff's Supplemental and Expert Disclosures, [Rs. 235, 238, 239], and Defendant Terry D. Hall's Motion for Joinder of Defendants' Motions to Strike, [R. 240], are GRANTED IN PART AND DENIED IN PART. The motions to strike are denied in part to the extent that Rebecca Reier's supplemental report will not be stricken, and are granted in part to the extent

that all supplemental, amended, and rebuttal reports by Patricia Bartzak, Joel Bowers, Richard Schmidt, and Robert DeLorenzo shall be stricken from the record.

Signed June 14, 2016.

Signed By:
Edward B. Atkins   *EBA*
United States Magistrate Judge