UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

|  |  |
|---|---|
| ROBYN BENTLEY,<br><br>      Plaintiff,<br><br>v.<br><br>HIGHLANDS HOSPITAL CORP., et al.,<br><br>      Defendants. | Civil No. 15-97-ART-EBA<br><br>**MEMORANDUM OPINION<br>AND ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

When medical care goes awry, patients often turn to lawyers. But like lay people, lawyers often cannot figure out what, if anything, went wrong. So to whom do they turn? Back to doctors. And when that happens, medicine and those who practice it once again take center stage. This time, though, they come not to help treat the patient but to explain, as expert witnesses, how she should have been treated in the first place.

I

On July 29, 2013, Plaintiff Robyn Bentley sought medical care at the Paul B. Hall Regional Medical Center ("PBH") and the Highlands Regional Medical Center ("Highlands") after she began experiencing severe back pain and other symptoms. Bentley alleges that doctors at those facilities failed to diagnose her condition as post-infectious transverse myelitis, a dangerous form of spinal inflammation. It was another year, she says, before doctors elsewhere finally gave her a definitive diagnosis. But by then, it was too late; she was already paralyzed below the waist. Believing that reasonably competent doctors would have caught her condition in time to prevent her paralysis, Bentley has sued both

medical centers, two doctors, and Whitaker National Corporation, a company that contracted to provide the services of one of the doctors.  R. 110 (first amended complaint).

As discovery progressed in this case, the time came for the parties to disclose their experts—all those professionals they wish to have testify at trial on the quality of Bentley's care.  *See* Fed. R. Civ. P. 26(a)(2)(A)–(C).  Twice, Bentley asked and the Court agreed to extend the deadlines for these disclosures.  R. 104; R. 138.  Though the second such order provided for the possibility that the parties would ask for more time, R. 138 at 1—and indeed the Court later extended the deadline for all fact and expert discovery, R. 195—the parties never again asked to push the expert disclosure deadlines.  So Bentley was required to disclose her experts by March 11, 2016.  The defendants had to do the same by April 8, 2016.  And "any supplementation" by either side was due April 29, 2016.  R. 138.  Bentley and the defendants each made their initial disclosures in a timely fashion.  R. 152; R. 179; R. 180; R. 182; R. 183.  But on April 21, April 29, and May 9, Bentley submitted five more expert reports, which she described as various forms of "supplemental," "amended," and "rebuttal".  R. 204; R. 208; R. 220; R. 233.

The defendants moved to strike these additional reports.  R. 235; R. 238; R. 239; R. 240.   In the defendants' view, these reports were not "supplemental" disclosures correcting or clarifying "incomplete or incorrect" information.  *See* Fed. R. Civ. P. 26(e).  Rather, the defendants argue that these extra reports introduced new opinions and theories of liability, long after the March 11 deadline for such disclosures had passed.  So the defendants asked the Court to strike these reports as untimely and unjustified.  *See* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence . . .

at a trial, unless the failure was substantially justified or is harmless.").  The defendants' motions were referred to Magistrate Judge Atkins for a ruling.  *See* Fed. R. Civ. P. 72(a).

After hearing from the parties, Judge Atkins denied the motions as to one of Bentley's experts, Rebecca Reier.  R. 285 at 13.  Judge Atkins concluded that Reier's supplemental report—disclosed on April 29— merely expounded upon allegations in her initial opinion. *Id.* at 4−5.  As a result, the additions were both proper under Rule 26(e) and timely.  *Id.*  By contrast, Judge Atkins determined that the remaining reports advanced new opinions and that their late disclosure was not "substantially justified" or "harmless."  Fed. R. Civ. P. 37(c)(1); R. 285 at 13.  Judge Atkins therefore granted the motions to strike the supplemental, amended, and rebuttal reports of the four remaining experts:  Richard Schmidt, Patricia Bartzak, Dr. Joel Bowers, and Dr. Robert DeLorenzo.  R. 285 at 13–14.

Bentley now asks this Court to set aside Judge Atkins's decision striking these reports.  R. 340.  At first, PBH questioned whether Bentley's objections were timely made.  But the parties now agree that they were.  R. 348 at 1; R. 350 at 2.  So the only question that remains is whether to sustain Bentley's objections.  That is something the Court may do only if Judge Atkins's order was "clearly erroneous" or "contrary to law."  Fed. R. Civ. P. 72(a); *see also United States v. Curtis*, 237 F.3d 598, 603 (6th Cir. 2001).  A high bar to be sure, and one that Bentley bears the task of clearing.  *See, e.g.*, *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 272 (6th Cir. 2010); Wright & Miller, Federal Practice and Procedure § 3069 (2d ed.), Westlaw (database updated Apr. 2016).

## II

Apart from the merits, Bentley offers two grounds on which the Court might set aside Judge Atkins's order.  Neither is persuasive.

A

First, Bentley argues that the Court must sustain her objections because the defendants failed to respond to them. *See* R. 350 at 2−4. The Court doubts both Bentley's premise and the conclusion she would draw from it. A review of the docket reveals that at least one defendant, PBH, has opposed her objections. R. 348. Granted, PBH did so in a fairly cursory manner: by incorporating all of the arguments that the defendants had previously made in their substantive motions to strike. *See id.* But Bentley never explains why that should matter. While incorporating by reference is generally disfavored, even parties objecting to a magistrate judge's order have been permitted to do so by incorporation. *See, e.g., Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). And if the objecting party—the party carrying the burden of persuasion—can preserve arguments through incorporation, the Court sees no reason why a party who would defend the same order should not be permitted the same leave. Bentley certainly provides no authority to the contrary.

Neither, for that matter, does Bentley cite any authority for the proposition underlying her argument: that the defendants' failure to oppose her objections entitles her to relief from Judge Atkins's order. Perhaps for good reason. Nothing in Rule 72 licenses a district court to set aside a magistrate judge's order simply because the objecting party's concerns have not been opposed (or opposed with the requisite degree of specificity). Rather, Rule 72 instructs the district court to modify only those "part[s] of the order that [are] clearly erroneous or . . . contrary to law." Fed. R. Civ. P. 72(a). And though Bentley might wish to have it otherwise, her assertion of error does not become true merely by virtue of not being (adequately) opposed.

B

Alternatively, Bentley argues that the defendants' motions to strike should be disregarded because they failed to comply with Local Rule 37.1. R. 340 at 17–19. That rule requires counsel to attach to "every discovery motion" a certification that he or she made "a good faith effort" to resolve the discovery dispute at issue without the Court's involvement. Local Rule 37.1. The rule also states that the Court will not entertain a motion if counsel fails to so confer and certify. *Id.* Here, Bentley reports that the defendants never worked with her to resolve their concerns regarding her supplemental disclosures. R. 340 at 17−19. Instead, she says, they skipped straight to filing motions to strike, which were not accompanied by the required certifications. *Id.*

Motions to strike untimely expert reports are not "discovery motions" within the meaning of Local Rule 37.1. Such motions do not seek to compel discovery or somehow limit it. Instead, they seek evidentiary relief: The defendants ask the Court to bar Bentley from introducing the untimely expert opinions as evidence at trial. As a result, Rule 37.1 does not require parties to confer prior to filing a motion to strike an untimely expert opinion. *See, e.g.*, *1st Source Bank v. First Res. Fed. Credit Union*, 167 F.R.D. 61, 64 (N.D. Ind. 1996) (reaching same conclusion under an equivalent rule); *Standard Servs. Co. v. Witex USA, Inc.*, No. Civ.A. 02-537, 2003 WL 2004442, at *3 n.3 (E.D. La. Apr. 30, 2003) (same).

But even if the defendants had violated Local Rule 37.1, the Court may exercise its discretion to look past their omissions. *See, e.g.*, *Copeland v. Regent Elec., Inc.*, 499 F. App'x 425, 429 (6th Cir. 2012); *Mohney v. USA Hockey, Inc.*, 5 F. App'x 450, 460 (6th Cir. 2001). There is no reason to believe that conferral would have saved the Court much time or effort—the purpose of Rule 37.1. Bentley contends that it could have resolved the

defendants' concerns by allowing them to depose her experts again. R. 340 at 17–18. But the suggestion that this accommodation would have resolved the defendants' concerns is hard to swallow. Bentley's position presupposes that a party who wishes to circumvent an expert disclosure deadline may do so by simply opening up its experts to discovery once more—a theory that implies that discovery and disclosure deadlines are little but suggestions, malleable at the parties' will. Of course, they are not. *See, e.g.*, *Columbia Gas Trans. Corp. v. Zeigler*, 83 F. App'x 26, 31 (6th Cir. 2003). So it is hardly a stretch to think that the defendants would have insisted that Bentley had no right to submit untimely opinions under the guise of supplementation, even if given the opportunity to depose the new experts. Meaning, the matter would have ended up before this Court regardless, and, as the Court will explain, for good reason.

## III

Determining whether a party's expert disclosure was timely often requires more than just checking a calendar. For supplemental and rebuttal opinions, in particular, the task is as much a question of substance as chronology. Here, Judge Atkins concluded that each of the supplemental, amended, and rebuttal opinions that Bentley disclosed on behalf of Schmidt, Bartzak, Dr. Bowers, and Dr. DeLorenzo were untimely. *See* R. 285 at 5–13. In two cases, that was because the hour for supplementation had passed. *See id.* at 7–8, 10–11. But for the others—disclosed before the hour had run—the issue was instead that the new opinions were not true "supplementation" at all. *See id.* at 5–7, 9–13.

## A

If a party wants to introduce an expert opinion at trial, she has to give the other side a heads-up. Fed. R. Civ. P. 26(a)(2). But how much warning is enough? Rule 26 sets some

guideposts. Advance warning means handing over the witness's name and a description of the opinions she will offer—either in the form of a report or a summary. Fed. R. Civ. P. 26(a)(2)(A)–(C). And it means making that exchange early enough in the case to permit the other side to prepare a response. How early is early enough? Well, at least 90 days in advance of trial, though the Court can set its own deadline. Fed. R. Civ. P. 26(a)(2)(D). In this case, the Court gave Bentley until March 11 to disclose her experts; the defendants had until April 8. R. 138.

A party's duty to disclose does not end with this initial exchange. Neither, for that matter, does a party's ability to offer up new expert opinions. Instead, Rule 26 requires a party to "supplement or correct" its initial disclosure if it later "learns that in some material respect the disclosure . . . is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1). And even if the deadline for initial disclosures has passed, the rule permits a party to disclose a new expert opinion in rebuttal to another party's expert. Fed. R. Civ. P. 26(a)(2)(D).

But the window for supplementation and rebuttal does not stay open forever. And it is not hard to see why—otherwise "there would be no finality to expert reports, as each side, in order to buttress its case" would go on ad infinitum "'supplement[ing]' existing reports and modify[ing] opinions previously given." *Beller ex rel. Beller v. United States*, 221 F.R.D. 696, 701 (D.N.M. 2003). So Rule 26 imposes time limits. "Any additions or changes" to an expert's disclosure must be shared "in a timely manner" and no later than "the time the party's pretrial disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(1)(A), (2). Rebuttal reports, meanwhile, are ordinarily due thirty days after the other party's disclosure. Fed. R. Civ. P. 26(a)(2)(D)(ii). Both deadlines, though, are merely

default rules. Fed. R. Civ. P. 26(a)(2)(D). And in this case, the Court ordered that "any supplementation" by either party be completed by April 29. R. 138 at 2.

The limits on supplemental and rebuttal opinions are more than just chronological, though—and again, for good reason. Imagine if, even after the initial deadline for disclosing experts has passed, a party could offer up (and use at trial) any new expert opinion it wanted. All the party has to do is to call the disclosure some variation of "supplemental" or "rebuttal." In that world, parties would be able to "make an end-run around the normal timetable for conducting discovery." *Disney Enters., Inc. v. Kappos*, 923 F. Supp. 2d 788, 795 (E.D. Va. 2013) (internal quotation marks omitted). The initial disclosure deadline would lose all meaning: Parties would hold back crucial opinions from their initial disclosures, only to drop them on their opponent at the last minute, a nasty surprise falling like a bag of bricks. Rule 26 would, in such a world, only invite the very gamesmanship it was meant to curtail. *See McHugh v. Olympia Entm't, Inc.*, 37 F. App'x 730, 735 (6th Cir. 2002) ("Rule 26 must be read in light of its dual purposes of narrowing the issues and eliminating surprise.").

To avoid this very abuse, Rule 26 places strict substantive limits on supplemental reports. Rule 26 requires a party to "supplement or correct" its disclosure if it "learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e)(1). But the rule is not a license to freely amend expert reports to bolster a party's position. *See Luke v. Family Care & Urgent Med. Clinics*, 323 F. App'x 496, 499–500 (9th Cir. 2009). Rather, supplementation is limited to "correcting inaccuracies" or "filling interstices" in an initial disclosure. *Munchkin, Inc. v. Playtext Prods., LLC*, 600 F. App'x 537, 538 (9th Cir. 2015) (internal quotation marks omitted). Courts have therefore permitted

parties to fill gaps in initial reports when they later learn of the missing information.  *See, e.g.*, *Dunning v. Bush*, 536 F.3d 879, 889–90 (8th Cir. 2008) (allowing supplemental report because it provided information that initial disclosure noted would have to be obtained through discovery).  But courts have routinely rejected attempts to add new analyses, opinions, or theories under the guise of supplementation.  *See, e.g.*, *E.E.O.C. v. Freeman*, 778 F.3d 463, 467 n.7 (4th Cir. 2015); *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 836 (9th Cir. 2015); *Luke*, 323 F. App'x at 500.  This is especially true when the information underlying the new opinion was available to the party at the time of her initial disclosure.  *See Matilla v. S. Ky. Rural Elec. Coop. Corp.*, 240 F. App'x 35, 43 (6th Cir. 2007); *see also* Black's Law Dictionary 563 (10th ed. 2014) (defining "supplemental disclosure" as "[t]he disclosure of additional facts and information, usu[ally] because of previous unavailability").

Rule 26 similarly restricts rebuttal opinions.  Parties may disclose rebuttal testimony after the deadline for initial disclosures has passed.  *See* Fed. R. Civ. P. 26(a)(2)(D)(ii).  But rebuttal opinions are limited in scope:  They must be "intended solely to contradict or rebut evidence on the same subject matter identified by another party['s]" expert disclosure.  *Id.* The rebuttal expert "may cite new evidence and data so long as the new evidence and data is offered to directly contradict or rebut the opposing party's expert."  *Glass Dimensions, Inc. ex rel. Glass Dimensions, Inc. Profit Sharing Plan & Trust v. State St. Bank & Trust Co.*, 290 F.R.D. 11, 16 (D. Mass. 2013).  But they may not "advance new arguments or new evidence" outside the scope of the opposing expert's testimony.  *Blake v. Securitas Sec. Servs., Inc.*, 292 F.R.D. 15, 17 (D.D.C. 2013) (quoting *Larson v. Wisc. Cent. Ltd.*, No. 10-C-446, 2012 WL 368379, at *4 (E.D. Wisc. Feb. 3, 2012)).

What happens if a party's supplemental or rebuttal disclosure is, in truth, neither supplemental nor rebuttal?  Well, substance triumphs over form:  The Court will look past the party's label and construe the report as an initial disclosure of an affirmative expert opinion under Rule 26(a)(2)(A)–(C).  And if the deadline for such disclosures has passed, then the report is untimely.  The question then becomes whether the untimely disclosure was "substantially justified" or "harmless."  Fed. R. Civ. P. 37(c)(1).  If it was not, then the Court will bar the disclosing party from offering the tardy opinion at trial.  *See, e.g.*, *Dickenson v. Cardiac & Thoracic Surgery of E. Tenn., P.C.*, 388 F.3d 976, 983 (6th Cir. 2004) ("The exclusion of non-disclosed evidence is automatic and mandatory under Rule 37(c)(1) unless non-disclosure was [substantially] justified or harmless." (quoting *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 758 (7th Cir. 2004)).   It is to the first question—timeliness—that the Court now turns.

B

Richard Schmidt is the President, CEO, and General Counsel of United Hospital System.  R. 394-1 at 1 (curriculum vitae).  Bentley timely identified Schmidt on March 11 as a hospital-management expert who would testify regarding PBH and Highlands's duties in hiring and supervising medical personnel.  *See* R. 152 (certificate of service); R. 235-1 (initial expert report).  Bentley disclosed a supplemental report authored by Schmidt on April 29.  *See* R. 208 (certificate of service); R. 235-2 (supplemental expert report).  A true supplemental opinion would have been timely on that date.  *See* R. 138.  But PBH and Highlands moved to strike Schmidt's new report.  *See* R. 235 at 3–4; R. 238 at 5.  As grounds, they argued that the supplement added two opinions not present in Schmidt's original report: first, that Highlands should have put in place procedures to ensure the quality

of Dr. Hall's work, R. 235 at 4; and second, that PBH was negligent in retaining Dr. Styer, R. 238 at 5. Judge Atkins agreed that both opinions were new, not proper supplementation under Rule 26(e), and so untimely given the passage of the March 11 deadline for Bentley's initial expert disclosures. R. 285 at 9–10.[1]

The Court sees no error in Judge Atkins's ruling. Take first Schmidt's opinion regarding Dr. Hall's contract with Highlands. Schmidt's original report opined that, by tying Dr. Hall's compensation to the number of films he read each year, Highlands incentivized Dr. Hall "to read a greater number of films, at the expense of accuracy." R. 235-1 at 10. An appropriate supplement might have corrected Dr. Hall's read volume or supplied his error rate. Schmidt's supplemental report goes much further. It argues that Highlands failed to subject Dr. Hall's large number of reads to adequate peer review (or any peer review, for that matter). *See* R. 235-2 at 10–11 (supplemental report); R. 419 at 73–74 (transcript of *Daubert* hearing). But as Schmidt admitted during his recent *Daubert* hearing, the concept of "peer review" appears nowhere in his initial report. *See* R. 419 at 97. So, in essence, Schmidt now argues for the first time that *not only* did Dr. Hall's compensation scheme create perverse incentives, but Highlands failed to *otherwise* counter those incentives through peer review or other quality control measures. *See* R. 340 at 8 (Bentley's objections) (suggesting that "HRMC should have had some mechanism in place to review Dr. Hall's work so that quality would not in fact be compromised despite the incentive to read as many films as possible"). This is not a simple correction of an inaccuracy. Neither is it filling in a gap in a preexisting

---

[1] PBH also objected to a third addition in Schmidt's supplemental report: Schmidt's opinion that PBH violated industry standards when it sought Bentley's consent to treatment while she was experiencing severe pain. R. 238 at 5. Judge Atkins mentioned this opinion, but did not address it at length. *See* R. 285 at 9–10. Judge Atkins did, however, strike Schmidt's supplemental report in its entirety, which necessarily includes this third opinion. *Id.* at 13–14. Because Bentley's objections only address the other two theories, *see* R. 340 at 7–12, the Court has no occasion to reinstate this third "consent" opinion. *See* Fed. R. Civ. P. 72(a).

opinion. Rather, Schmidt's latest report is an attempt to slip in a new theory of liability under the guise of supplementation. That is not allowed under Rule 26(e). *E.E.O.C.*, 778 F.3d at 467 n.7; *Richardson v. Korson*, 905 F. Supp. 2d 193, 199 (D.D.C. 2012).

Bentley's attempt to add a negligent-retention theory to Schmidt's testimony fares no better. Schmidt's original report argued that Whitaker and PBH were each negligent in *hiring* and *supervising* Dr. Styer. *See* R. 235-1 at 3–6. Schmidt's supplemental report makes a subtle but significant shift. Schmidt continues to argue that Whitaker negligently hired and supervised Dr. Styer. R. 235-2 at 5. But now Schmidt adds that PBH was negligent in "monitoring and *retaining* Dr. Styer." R. 235-2 at 4 (emphasis added). As Judge Atkins implicitly recognized, negligent hiring, supervision, and retention are distinct theories of liability. *See* R. 285 at 10. Yes, they are related. *See, e.g.*, *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 733–34 (Ky. 2009). But the claims focus on distinct fact patterns and judgments: One faults the employer for hiring someone when it should have known better, another for failing to properly oversee the employee's job functions, and the third for failing to terminate the employee when a reasonably prudent employer would have done so. *See, e.g.*, *Airdrie Stud, Inc. v. Reed*, No. 2001-CA-001397-MR, 2003 WL 22796469, at *1 (Ky. Ct. App. Nov. 26, 2003); *A. Doe v. First Presbyterian Church*, 710 N.E.2d 367, 372 (Ohio Ct. App. 1998).

Bentley maintains that her negligent retention theory is not really new at all. To that end, Bentley notes that Schmidt's original report faulted Whitaker and PBH for their "ongoing grant of privileges to Dr. Styer in the face of knowledge that Dr. Styer had failed to provide safe and competent medical care to patients." R. 340 at 9 (quoting R. 238-8 at 3 (Schmidt's original report)). The supplemental report, Bentley argues, merely clarified what

this line already signaled: that Schmidt would testify that the defendants negligently retained Dr. Styer. The problem with this argument, though, is that Schmidt's original report references the defendants' "ongoing grant of privileges to Dr. Styer" only in the context of his opinion that PBH and Whitaker "were negligent in hiring and supervising Dr. Styer." *Id.* (quoting R. 238-8 at 3). The original report makes no mention of the distinct theory of negligent *retention*. And given that Schmidt's original report expressly included both negligent hiring and supervision, PBH and Whitaker could reasonably have thought that the omission of negligent retention was intentional.

Because Schmidt's negligent retention opinion is new, and because Bentley has failed to identify any newly discovered information that made Schmidt's initial report "incomplete or incorrect," Fed. R. Civ. P. 26(e), Judge Atkins correctly deemed this opinion untimely.

C

Bentley also objects to the exclusion of Patricia Bartzak's supplemental report. Bentley served that report on April 29—after the deadline for initial disclosures but before the deadline for supplementation had expired. R. 208 (certificate of service); R. 235-5 (Bartzak's supplemental report). According to her initial report, Bartzak, an Associate Professor of Nursing, will testify that nurses at both PBH and Highlands failed to exercise the requisite standard of care when treating Bentley. *See* R. 235-3 at 1 (Bartzak's initial report); R. 393-2 (Bartzak's curriculum vitae). Bartzak's supplemental report offers two amendments. First, it corrects the name of Bentley's treating nurse at Highlands, *compare* R. 235-5 at 7, *with* R. 235-3 at 5, an error identified by defense counsel during a subsequent deposition, *see* R. 340 at 12–13. Second, it adds "[f]urther examples" of how the nursing staff at both hospitals came up short in treating Bentley. R. 235-5 at 5. As to PBH, Bartzak

adds that nurses sought Bentley's consent to treatment while she was in severe pain, failed to monitor her reaction to pain medication, and failed to follow up on her discharge instructions. *Compare* R. 235-5 at 2–7, *with* R. 235-3 at 1–5. As to Highlands, Bartzak argues for the first time that Nurse Sevetta Little failed to adequately monitor or document Bentley's "evolving neurological symptoms." *Compare* R. 235-5 at 7–8, *with* R. 235-3 at 5.

Highlands and PBH moved to strike Bartzak's supplemental report on the ground that these "further examples" are actually new opinions not properly the subject of a supplemental disclosure. R. 235 at 4–5; R. 238 at 4–5. After confirming that these examples were indeed missing from Bartzak's original report, Judge Atkins ruled that Bartzak's supplemental disclosure was untimely. R. 285 at 5–7.

The Court agrees with Judge Atkins in one respect. The entire point of Bartzak's testimony is to explain the ways in which the hospitals provided Bentley with inadequate care. Providing additional examples of that inadequate treatment is not an attempt to clarify or correct Bartzak's prior report. It is instead a way to slip additional theories of liability to the factfinder. Once again, and as Judge Atkins explained, parties may not use the limited vehicle of Rule 26(e) to expand their affirmative theories of relief, let alone do so this late in the game. This case might be different if these new "examples" were based on information Bartzak learned only after her initial disclosure. But Bentley has not argued that they were. The Court will therefore overrule Bentley's objections to the extent that she argues Bartzak's supplemental opinion was timely disclosed. *See, e.g.*, *Matilla*, 240 F. App'x at 43 (holding that expert's new opinion, which added a "second theory of liability [that] was based on preexisting facts," was untimely).

Bartzak's attempt to correct the name of Bentley's treating nurse, however, was a proper and timely supplementation of her initial report. In fact, this change is precisely the sort of factual correction that Rule 26(e) contemplates. Judge Atkins acknowledged as much in his order. *See* R. 285 at 6. Still, it is unclear whether Judge Atkins struck even this aspect of Bartzak's supplemental report. *See* R. 340 at 12. He likely did not intend to do so. After all, Judge Atkins explained at one point that, because this particular substitution was "an appropriate supplementation," he would strike "th*e remaining portions* of Ms. Bartzak's supplemental report." R. 285 at 6 (emphasis added). Bentley is correct, however, that on two other occasions the order suggests that Judge Atkins struck Bartzak's supplemental report in its entirety. *See id.* at 7, 13–14. In the interest of clarity, the Court will sustain Bentley's objection in this narrow regard: Highlands's motion to strike is denied with respect to the name change in Bartzak's supplemental report.

D

Dr. Joel Bowers is a diagnostic radiologist who is expected to testify regarding radiological imaging performed on Bentley at both PBH and Highlands. R. 235-6 at 1. As relevant here, Dr. Bowers's initial report argued that Dr. Hall failed to read Bentley's lumbar MRI accurately and failed to recommend "a more complete thoracic MRI for further evaluation." *Id.* at 2. On May 23, nearly a month after the deadline for supplemental disclosures had passed, Dr. Bowers submitted an "amended report." R. 233 (certificate of service); R. 238-11 (Bowers's amended report). This new report added two significant contentions. First, Dr. Bowers argues that a reasonably prudent radiologist in Dr. Hall's shoes would have "formed a differential diagnosis with transverse myelitis as the most likely

diagnosis." *Id.* at 2–3. Second, Dr. Bowers opines that Bentley's MRI should have been prioritized before all patients except those presenting with a stroke. *See id.* at 3.

It is beyond question that Dr. Bowers's "amended" report was not disclosed in compliance with Rule 26 or this Court's scheduling orders. Like so many of Bentley's "supplemental" disclosures, these amendments advance entirely new theories of relief— accusing Dr. Hall of violating the applicable standard of care in two ways not identified previously. And even if Dr. Bowers's amendments had been proper supplementation under Rule 26(e), they still would not have been timely. As Judge Atkins noted, Bentley served Dr. Bowers's amended report nearly a month after the deadline for supplementation. R. 285 at 7; *see also* Fed. R. Civ. P. 26(a)(2)(D) ("A party must make [expert] disclosures at the times and in the sequence that the court orders.").

E

Dr. Robert DeLorenzo is a Professor of Neurology at Virginia Commonwealth University. R. 383-1 (curriculum vitae). In his original expert report, Dr. DeLorenzo disclosed that he intends to testify that PBH and Highlands could have minimized Bentley's "residual injuries" by timely administering corticosteroids. R. 238-1 at 6. Through two additional reports—a "supplemental" report served April 21 and a "rebuttal" report served on May 9—Bentley now seeks to expand the scope of Dr. DeLorenzo's testimony. R. 204 (service of supplemental report); R. 238-2 (supplemental report); R. 220 (service of rebuttal report); R. 238-3 (rebuttal report). Bentley explains that both reports are intended to rebut the opinion of Dr. Robert Kuhn, one of PBH's witnesses. R. 340 at 5. Dr. Kuhn is a pharmacologist who will testify that Bentley was mentally competent when she signed a release in February 2014 waiving her claims against PBH. *See* R. 238-3 at 1. According to

Dr. DeLorenzo, who is a pharmacologist as well as a neurologist, the extensive list of medications being taken by Bentley would have significantly impaired her mental capacity. R. 238-2 at 2; R. 238-3 at 4. Judge Atkins determined that Dr. DeLorenzo's supplemental and rebuttal reports were both untimely, R. 285 at 10–13, a determination to which Bentley now objects, R. 340 at 4–5.

The Court agrees with Judge Atkins regarding Dr. DeLorenzo's supplemental report. Bentley disclosed that report on April 21, before the deadline for supplementation had expired. But the report is, again, not a proper supplement. As Judge Atkins noted, the report introduces a new line of opinion to Dr. DeLorenzo's testimony—the pharmacological effects of Bentley's medication—a maneuver that a party may not accomplish by way of Rule 26(e) after the deadline for initial disclosures has passed. R. 285 at 12.

Bentley responds that Dr. DeLorenzo's supplemental opinion was actually intended as rebuttal, even though she did not label it as such. But this "intention" is nowhere evident in the report itself. *See* R. 238-2. To qualify as a proper rebuttal opinion, the testimony must be "intended solely to contradict or rebut evidence on the same subject matter identified" by Dr. Kuhn. Fed. R. Civ. P. 26(a)(2)(D)(ii). Dr. DeLorenzo's subsequent rebuttal report does just that: The opinion explains that it is "intend[ed] to rebut" specific "assertions by Dr. Kuhn." R. 238-3 at 1. And it fleshes out perceived flaws in Dr. Kuhn's analysis. *Id.* at 2–4. Dr. DeLorenzo's supplemental report, by contrast, does none of this. That report does not mention Dr. Kuhn, let alone say Dr. DeLorenzo reviewed Dr. Kuhn's opinion before preparing this new pharmacological testimony. *Compare* R. 238-2 at 1, *with* R. 238-3 at 1. The report does state an affirmative opinion on the same general subject matter discussed by Dr. Kuhn. But that alone is not enough to transform Dr. DeLorenzo's supplemental opinion

into rebuttal. *See Withrow v. Spears*, 967 F. Supp. 2d 982, 1002 (D. Del. 2013).("[E]xpert reports that simply address the same general subject matter as a previously-submitted report, but do not directly contradict or rebut the actual contents of that prior report, do not qualify as proper rebuttal or reply reports."); *Glass*, 290 F.R.D. at 16–17 (same).

Bentley knew long before Dr. Kuhn that she would want a pharmacologist's opinion on the effects of medication on her mental capacity. Indeed, she timely disclosed an opinion from Dr. Christopher Betz on that very same subject. *See* R. 392-3 at 1 (noting Betz's initial report was disclosed March 11). And Bentley knew how to offer a proper rebuttal opinion, as Dr. DeLorenzo's subsequent report shows. So the Court sees no reason to construe Dr. DeLorenzo's supplemental report as something that it is not. *People v. Kinder Morgan Energy Partners, L.P.*, 159 F. Supp. 3d 1182, 1191–93 (S.D. Cal. 2016) (excluding rebuttal that, instead of "solely contradict[ing] or rebut[ting]" another expert, attempted to add an untimely opinion that the party should have known all along it would need).

By contrast, the Court agrees with Bentley that Dr. DeLorenzo's rebuttal report was proper rebuttal and so timely disclosed. The Court's scheduling orders imposed clear deadlines for supplementation of expert disclosures. *See* R. 20 at 2 ("Supplementation of disclosures and responses as required by Rule 26(e) is due within 30 days of this new information, but no later than Friday, March 18, 2016."); R. 138 at 2 (resetting April 29 as the cutoff for "any supplementation"). But neither order referenced disclosures of rebuttal testimony, which are distinct from supplementation under Rule 26. Supplementation either completes or corrects information in an opinion already disclosed. Fed. R. Civ. P. 26(e)(1)(A). Rebuttal disclosures, on the other hand, concern new testimony "intended solely to contradict or rebut evidence on the same subject identified by another party." Fed.

R. Civ. P. 26(a)(2)(D)(ii). Given this distinction, the April 29 supplementation deadline did not encompass rebuttal testimony. As a result, the default timetable for disclosing rebuttal evidence applied here: Bentley had thirty days from the date PBH disclosed Dr. Kuhn's testimony to disclose Dr. DeLorenzo's rebuttal report. Fed. R. Civ. P. 26(a)(2)(D)(ii) ("Absent a stipulation or a court order, the disclosures must be made . . . if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party . . . within 30 days after the other party's disclosure."). Because PBH disclosed Dr. Kuhn's testimony on April 8, Dr. DeLorenzo's rebuttal report was timely on May 9.[2] The Court will therefore set aside Judge Atkins's order insofar as it strikes this report.[3]

## IV

Timeliness is only half the battle that Bentley wages in her objections. The other half involves questions of excuse and harm. Because several of her supplemental expert opinions were untimely, Bentley may not rely on them at trial unless she first proves that the failure to disclose them in a timely fashion was "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1); *see also Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (noting that the nondisclosing party bears the burden of proving harmlessness). Or, more accurately given the posture of this case, Bentley must show that Judge Atkins's decision to exclude her supplemental reports was "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a). Bentley takes up that challenge with respect to the supplemental

---

[2] Because the thirtieth day after April 8, 2016, was May 8, 2016—a Sunday—the deadline to disclose any rebuttal testimony was extended to the next day. Fed. R. Civ. P. 6(a)(1)(C).

[3] The undersigned, not Judge Atkins, drafted the scheduling order. And it is the undersigned's mistake by not including a rebuttal deadline in the scheduling order that caused this error.

reports of Schmidt, Bartzak, and Dr. Bowers.[4]  Because the analysis under Rule 37(c)(1) is substantially similar for each, the Court will consider these reports together.

What does it mean for an untimely disclosure to be "substantially justified" or "harmless"?  Well, the Sixth Circuit not so long ago said "the test is very simple:  the sanction is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless."  *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010) (quoting *Vance ex rel. Hammons v. United States*, 182 F.3d 920, 1999 WL 455435, at *6 (6th Cir. 1999) (table)).  But as these things go, subsequent panels have felt the need to flesh out this "simple test."  Recently, the Sixth Circuit imported a sort of balancing test from the Fourth Circuit.  That test calls on district courts to consider five factors:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure[.]

*Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015) (quoting *Russell v. Absolute Collection Servs.*, 763 F.3d 385, 396–97 (4th Cir. 2014)).  District courts have broad discretion in applying these factors and need not apply each one rigidly.  *See Baker Hughes Inc. v. S&S Chem., LLC*, No. 15-2413, 2016 WL 4578355, at *10–11 (6th Cir. 2016) (to be published); *Pride v. BIC Corp.*, 218 F.3d 566, 578 (6th Cir. 2000).  The factors simply lend themselves to the task at the heart of Rule 37(c)(1): separating "honest," harmless mistakes

---

[4]  Bentley does not argue that Dr. DeLorenzo's supplemental disclosure, if untimely, nevertheless satisfies Rule 37(c)(1).  As a result, and having concluded that this report was untimely, the Court will not address whether Bentley's tardiness was excusable as to this report.  *See R.C. Olmstead*, 606 F.3d at 270.

from the type of "underhanded gamesmanship" that warrants the harsh remedy of exclusion. *Howe*, 801 F.3d at 747, 749 (internal quotation marks omitted).

Consider now how those factors map onto this case. As Judge Atkins noted, there is really no question that Bentley's supplemental reports surprised the defendants. Schmidt's testimony both added an entirely new theory of liability (negligent retention) and expanded another opinion from a narrow issue (the incentives created by paying Dr. Hall per film read) to a broader one (the lack of peer-review procedures in PBH's radiology department). Bartzak's supplemental report, meanwhile, alleged several new instances of inadequate care by PBH and Highlands nurses. And Dr. Bowers's "amended" report accused Dr. Hall of two entirely new diagnostic shortcomings.

In response, Bentley insists that these additions were tied to the experts' initial opinions, so the defendants should have anticipated them. *See, e.g.*, R. 340 at 11 (arguing some of Schmidt's "new" opinions were "implicit in [his] original report"). But the rules do not require parties to read minds. And regardless, the fact that a party might have been able to guess what expert testimony was coming does not by itself justify a late disclosure or neutralize all harm it might have caused. *See, e.g.*, *McFerrin v. Allstate Prop. & Cas. Co.*, 29 F. Supp. 3d 924, 932 & n.5 (E.D. Ky. 2014).

Neither do the second or third factors (ability to cure the surprise and disruption of trial) cut in Bentley's favor. Schmidt and Bowers's supplemental reports were served weeks late and only shortly before their respective depositions. In Bartzak's case, the supplemental report came only *after* her scheduled deposition. Meanwhile, the deadline for the defendants to respond to these expert disclosures had either come and gone (in the case of Bartzak and Bowers) or was soon to expire (in the case of Schmidt). With the Court's deadline for expert

discovery looming mere weeks away—and *Daubert* hearings and trial scheduled not long after that—the defendants had little opportunity to respond adequately to these disclosures.

To all this, Bentley responds only that the Court could reopen discovery since the trial has now been continued to December. *See* R. 349 at 6. But to take that step might require the Court to schedule a new round of *Daubert* hearings and push trial back even further. That step would also reward Bentley for her untimeliness and suggest that deadlines bend to a party's will. The Court is not inclined to exercise its discretion in this way. *See Vance*, 182 F.3d 920, 1999 WL 455435, at *5–6 (explaining that Rule 37 helps "enforce[] discovery rules and orders . . . to prevent abuse by future litigants) (citing *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976) (per curiam)).

By contrast, the fourth factor—the importance of the new evidence—cuts in Bentley's favor. Judge Atkins concluded in his order that the new opinions introduced in the Schmidt, Bartzak, and Bowers supplemental reports were "marginally important," "important," and "significant" to Bentley's case, respectively. R. 285 at 6, 8, 10. Neither PBH nor Highlands has objected to this finding, and the Court sees no reason to disturb it.

That brings the Court to *Howe*'s fifth and final factor, the one that speaks directly to whether Bentley's untimely disclosures were "substantially justified." Fed. R. Civ. P. 37(c)(1). The closest Bentley comes to offering an explanation for her tardy disclosures is to say that the discovery in this case was "rushed" and "confusing." *Id.* at 16 (quoting *Howe*, 801 F.3d at 749). But discovery was hardly rushed. The parties originally had five months to conduct discovery, R. 20, and the Court extended that deadline three times, R. 107, R. 138, R. 195. In the end, the parties had more than eight months. Bentley recognizes as much in her objections, claiming that discovery was "rushed" in one sentence only to note in the next

22

that the parties had "several months." R. 340 at 16. Beyond this vague complaint, Bentley offers the Court nothing in the way of an excuse. And absent some "substantial justification" for the delay, the Court simply cannot say that Bentley's repeated failures to comply with Rule 26 were honest mistakes. *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003).

Under Rule 37(c)(1), forgiveness must be earned. Unlike exclusion, it neither comes automatically nor easily. To salvage her untimely supplemental reports, Bentley needed to give Judge Atkins and this Court some justification for her delay—or at least some reason to believe she had simply made some harmless mistakes. That much she has not done. Instead, Bentley argues that her mistakes should be excused because discovery in this case was rushed. Only, it was not. She says, too, that any harm caused by her tardy disclosures could be remedied if discovery is reopened. Only, this claim does nothing to explain her delay or account for either the deadlines that have passed or those that draw nearer each day. What Bentley asks for would invite dilatory tactics and discovery abuse. It would do nothing to "secure the just, speedy, and inexpensive determination" of this case. Fed. R. Civ. P. 1.

Whether Bentley reached this point by honest mistake, sheer negligence, or desire to "gain a tactical advantage," the Court does not know. *Barnette v. Grizzly Processing, LLC*, 809 F. Supp. 2d 636, 642 (E.D. Ky. 2011). What the Court does know is that Bentley has not established that her untimely disclosures of the Schmidt, Bartzak, and Bowers supplemental reports were "substantially justified" or "harmless." With the exception of the name change in Bartzak's report and Dr. DeLorenzo's rebuttal report, Bentley's objections to Judge Atkins's order are overruled.

**CONCLUSION**

Accordingly, it is **ORDERED** that Bentley's objections to Judge Atkins's Order of June 14, 2016, R. 340, are **SUSTAINED IN PART** and **OVERRULED IN PART.** Bentley's objections are sustained as to the correction of a treating nurse's name in Patricia Bartzak's expert report and as to Dr. Robert DeLorenzo's "Rebuttal Expert Report" dated May 9, 2016, R. 238-3. Bentley's objections are overruled in all other respects.

This the 6th day of October, 2016.

Signed By:

*Amul R. Thapar*

**United States District Judge**